**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MORGAN GREEN, Plaintiff, v. CREDIT ONE BANK, N.A., Defendant. | : | 3:24-CV-01924 (SFR) |

**MEMORANDUM & ORDER**

Plaintiff Morgan Green brings this action against Defendant Credit One Bank, N.A. ("Credit One") alleging violations of federal and state law in relation to a credit card account to which she asserts her name was added without her authorization. Credit One has filed a Motion for Summary Judgment, and Green has filed a Renewed Motion to Dismiss without Prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). For the reasons that follow, I grant summary judgment to Credit One on all counts and deny Green's motion for voluntary dismissal.

## I. BACKGROUND

### A. Factual Background

Green is a resident of Connecticut and Credit One is a financial institution based in Nevada. Def.'s L.R. 56(a)1 St. ¶¶ 1-2.[1] On or about October 17, 2022, Credit One received an

[1] The factual background is drawn primarily from facts in Credit One's Rule 56(a)1 Statement of Facts, ECF No. 45, Green's 56(a)2 Statement of Facts, and various exhibits attached to these Statements or filed separately on the docket. Green's 56(a)2 statement is spread across two docket entries: ECF Nos. 47 and 48. Green provided further facts in her response to Credit One's Rule 56(a)1 Statement of Facts. ECF No. 51. Green also filed a third "56(a)2 Statement of Additional Material Facts" which includes largely duplicative information, Pl.'s L.R. 56(a)2 St., ECF No. 52,

electronic application for a credit card account submitted by applicant Adrian Green as the accountholder, with Morgan Green listed as an "authorized user" on the account. Id. ¶ 3. Green "denies that she authorized, requested, or consented to being added as an authorized user" on any account, Pl.'s L.R. 56(a)2 St. ¶ 3, ECF No. 47, but does not deny that the application was submitted or that she was listed as an authorized user. On October 23, 2022, Credit One added Green as an authorized user on that account. Def.'s L.R. 56(a)1 St. ¶ 4. Green "disputes that she was validly or lawfully added as an authorized user," Pl.'s L.R. 56(a)2 St. ¶ 4, ECF No. 47, but does not dispute that she was added as an authorized user.

Credit One states that on October 23, 2022, it sent the physical plastic credit card to the accountholder, Adrian Green, at the address provided in the account application, along with a copy of the terms governing the relationship between Credit One and the accountholder, which included the disclosures required by the Truth in Lending Act. Def.'s L.R. 56(a)1 St. ¶ 8. Green states that she never received a credit card, account agreement, or disclosures related to the account. Green Aff. ¶ 5, ECF No. 53.

Green states that she "repeatedly disputed the unauthorized account with Equifax, TransUnion, and Credit One Bank in 2023." Pl.'s L.R. 56(a)2 St. ¶ 3, ECF No. 48. In support of this statement, she attaches a letter dated November 6, 2023 to TransUnion stating that her credit report contained inaccurate information relating to Credit One. ECF No. 48, at 3. She also provides a letter dated July 14, 2024 addressed to Equifax, which states "[t]his is now my

---

followed by an affidavit, ECF No. 53. In response to an order from the court, Credit One filed a supplemental memorandum, ECF No. 60, and Green filed a memorandum in opposition, ECF No. 62. Citations to the Rule 56(a)1 and 56(a)2 Statements are by paragraph number. Exhibits included with ECF No. 48 are referred to by ECF number and page number. With respect to other documents, page citations are to the page number generated by the ECF system.

**third dispute** regarding the inaccurate and unauthorized **Credit One Bank** tradeline on my Equifax report." *Id.* at 4. Green also attaches two letters to Credit One, both dated September 20, 2024, in which she informed Credit One that she had never authorized her name being used on the account and requested that Credit One take immediate action to remove the account from her credit report. *Id.* at 5.

Green states that "Credit One Bank admitted that the account was unauthorized" and that it "failed to timely remove Plaintiff from the account and her credit report after receiving notice of the dispute." Pl.'s L.R. 56(a)2 St. ¶ 4, ECF No. 48. To support this statement, Green attaches a letter addressed to her from Credit Bank, which states that Green was added as an authorized user to the account on October 23, 2022. The letter states further:

> On June 21, 2023, you spoke to a Customer Service representative and requested to be removed as an authorized user from the above-referenced account. Inadvertently, you were not removed and remained on the account.
>
> We apologize for the inconvenience this may have caused.
>
> On July 18, 2024, you were removed from the account. We have submitted a request to remove the tradeline from your credit history.
>
> *Id.* at 8.

Credit One acknowledges that on June 21, 2023, Green spoke with Credit One and requested that she be removed as an authorized user of the account. Def.'s L.R. 56(a)1 St. ¶ 14. Credit One submits a declaration from Despina Zuardo, Assistant Vice President of Customer Service at Credit One, who states that on June 21, 2023, Credit One "submitted an Automated Universal Dataform" to the Credit Reporting Agency ("CRA") "requesting that the CRAs delete the reporting as it pertained to Morgan Green." Zuardo Decl. ¶ 12, ECF No. 43-3. Zuardo states that on July 18, 2024, it submitted another Automated Universal Dataform

regarding the accounts to the CRAs requesting that the CRAs delete the reporting as to Green. *Id.* ¶ 13.

Credit One "does not contend that [Green] is legally responsible for the debt or a party to the Account Agreement." Def.'s L.R. 56(a)1 St. ¶ 11. Green "disputes Defendant's legal conclusions and compliance with federal law" but does not clarify whether she alleges owing any debt to Credit One. Pl.'s L.R. 56(a)2 St. ¶ 11, ECF No. 47. Zuardo says that "Credit One has no record of having undertaken any effort to collect the Account debt" from Green. Zuardo Decl. ¶ 14. Furthermore, Zuardo states that "[a] review of the Account records concerning the subject Account confirms that Credit One has no record of having ever received notice of a dispute from any Credit Reporting Agency ('CRA'), including but not limited to, Experian, Equifax and TransUnion, concerning the credit reporting of the Account as to Plaintiff Morgan Green." Zuardo Decl. ¶ 11.

In her affidavit, Green asserts that she disputed the Credit One tradeline appearing on her credit reports with three CRAs, and the "account was verified despite [her] disputes." Green Aff. ¶ 11, ECF No. 53. In addition, Green states in a Statement of Additional Material Facts that the "credit reporting agencies responded that the account was 'verified.'" Pl.'s L.R. 56(a)2 St. ¶ 5, ECF No. 48. In support, she relies on a document that states: "We investigated the information you disputed and the disputed information was VERIFIED AS ACCURATE." *Id.* at 11. However, it is not apparent from the document what entity conducted this investigation and how the investigation was conducted. Thus, there is no evidence in the record showing that any CRA notified Credit One of a dispute.

Green states that she was denied credit, suffered anxiety, stress, and humiliation, and incurred costs as a result of these events. *Id.* ¶¶ 7-9.

**B. Procedural History**

Green filed the underlying Complaint in Connecticut state court on October 28, 2024, and Credit One removed the action to this court on December 4, 2024. Not. Removal ¶ 2, ECF No. 1. On December 10, 2024, Green filed a motion for remand to state court, ECF No. 9, which the Court[2] denied on January 3, 2025, ECF No. 13. On October 27, 2025, Green filed a "Notice of Voluntary Withdrawal of Action Without Prejudice." ECF No. 36. I held that because Credit One had already filed an Answer, Green could not dismiss the action voluntarily absent either consent from Credit One or a court order. ECF No. 37. I informed Green that "to dismiss the action, either (1) the parties must file a joint stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) or (2) Plaintiff may request a court order dismissing the case pursuant to Fed. R. Civ. P. 41(a)(1)(B)." ECF No. 37.

On February 6, 2026, Credit One filed a motion for summary judgment. ECF No. 43 ("Def.'s Mem."). On February 23, 2026, Credit One filed a Rule 56(a)1 Statement of Undisputed Material Facts and the required notice for *pro se* litigants. ECF Nos. 45-46. On February 26, 2026, Green filed an opposition to the summary judgment motion, ECF No. 49, a response to Capital One's Rule 56(a)1 Statement, ECF No. 47, and a statement of additional material facts, ECF No. 48. Green also filed a "Notice to the Court Regarding Settlement Efforts," ECF No. 50, a "Local Rule 56(a)(2) Response to Defendant's Statement of Undisputed Facts," ECF No. 51, a "Local Rule 65(a)2 Statement of Additional Material Facts," ECF No. 52, an affidavit, ECF No. 53, and a Motion to Dismiss Without Prejudice, ECF No.

[2] This case was initially assigned to the Honorable Kari A. Dooley. It was transferred to me on January 6, 2025.

54. The Motion to Dismiss did not indicate Credit One's position on dismissal. *Id*. On June 24, 2026, I ordered Credit One to file a notice indicating its position on the Motion to Dismiss. ECF No. 55. On July 8, 2026, Credit One filed an opposition to the Motion to Dismiss. ECF No. 56.

On July 30, 2026, I ordered Credit One to file supplemental briefing to explain whether a document provided by Green referencing account verification indicates communication from the CRA to Credit One and, if so, why such communication does not constitute notice of a dispute for the purpose of 15 U.S.C. § 1681s-2. ECF No. 57. Credit One filed supplemental briefing on August 14, 2026. Defendant's Supplemental Memorandum, ECF No. 60 ("Def.'s Supp. Mem."). The court granted Green an opportunity to respond. ECF No. 61. On August 21, 2026, Green filed an Opposition to Defendant's Supplemental Memorandum. ECF No. 62 ("Pl.'s Opp.").

## II. LEGAL STANDARD

The principles governing review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proven at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close, contested issues of fact but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam); *Roberts v. Genting New York LLC*, 68 F.4th 81, 88 (2d Cir. 2023).

Additionally, I note that Green is representing herself *pro se*. "*Pro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)).

## III. DISCUSSION

Green alleges that Credit One committed several violations of state and federal law. In Count One, she alleges that Credit One violated the Fair Credit Reporting Act by failing to provide certain disclosures, investigate and correct disputed information, or report accurate information. Compl. 5, ECF No. 1-1. She also alleges that Credit One's actions were a "breach of consumer rights" regarding "unauthorized access to credit reports." *Id.* In Count Two, she alleges that Credit One violated the Fair Debt Collection Practices Act by "attempting to collect a debt not owed" by Green. *Id.* at 6. In Count Three, she alleges that Credit One violated the Truth in Lending Act by failing "to provide required account opening disclosures," and that these "actions constitute unauthorized issuance of credit." *Id.* In Count Four, she alleges violations of the Federal Trade Commission Act. *Id.* In Count Five, she alleges violations of "the CCPA" by failing to respond to consumer requests regarding personal information, report unauthorized access to personal information, and by the unauthorized sale of personal information. *Id.* Finally, in Count Six, she alleges violations of the Credit Card Accountability Responsibility and Disclosure Act for imposing unfair interest rate increases without notice and charging unlawful fees. *Id.*

I first address Green's motion for voluntary dismissal, and then turn to Credit One's motion for summary judgment.

**A. Motion to Dismiss Under Rule 41(a)(2)**

Green moves to voluntarily dismiss this case without prejudice under Rule 41(a)(2), arguing that she is facing "serious and ongoing medical conditions" heightened by this litigation and Credit One will not be prejudiced because the case remains in a pretrial phase and no merits ruling has been entered. ECF No. 54, at 1-2. Credit One responds that it would be "severely prejudiced" by a dismissal without prejudice because it has already invested time and resources into this matter through discovery, mediation, and preparing a motion for summary judgment. ECF No. 56, at 2. It also argues and that Green's motion is a "late hour gambit to obtain a 'second bite at the apple'" by preserving her claims for renewed litigation. *Id.*

Federal Rule of Civil Procedure 41(a)(2) allows the court to dismiss an action at the plaintiff's request where the time for unilateral dismissal under Rule 41(1)(A)(i) has passed and where all parties have not stipulated to a dismissal. Fed. R. Civ. P. 41(a). In relevant part, Rule 41(a)(2) allows dismissal "only by court order, on terms that the court considers proper." *Id.* Whether to grant a request for dismissal without prejudice under Rule 41(a)(2) lies within the discretion of the court. *Catanzano v. Wing*, 277 F.3d 99, 109 (2d Cir. 2001). Within the Second Circuit, there is a presumption that "[g]enerally, . . . a voluntary dismissal without prejudice under Rule 41(a)(2) will be allowed 'if the defendant will not be prejudiced thereby.'" *Catanzano*, 277 F.3d at 109 (quoting *Wakefield v. N. Telecom, Inc.,* 769 F.2d 109, 114 (2d Cir. 1985)).

In determining whether to dismiss without prejudice, a court considers five factors, as delineated by the Second Circuit in *Zagano v. Fordham Univ*ersity, 900 F.2d 12 (2d Cir. 1990):

> [1] the plaintiff's diligence in bringing the motion; [2] any "undue vexatiousness" on plaintiff's part; [3] the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; [4] the duplicative expense of relitigation; and [5] the adequacy of plaintiff's explanation for the need to dismiss.

900 F.2d at 14. "In addition, dismissal without prejudice is improper 'if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit.'" *Baiul v. NBC Sports, a division of NBCUniversal Media LLC*, 708 F. App'x 710, 714 (2d Cir. 2017) (quoting *Kwan v. Schlein*, 643 F.3d 224, 230 (2d Cir. 2011)).

As to the first factor, Green was not diligent in bringing her motion more than a year into this litigation. Green's motion follows a settlement conference before a Magistrate Judge and Credit One's motion for summary judgment. Regarding the second factor, there is no indication of any "undue vexatiousness" on plaintiff's part. As to the third factor, Green's motion comes after Credit One has gone through the burden and expense of discovery, mediation, and briefing its summary judgment motion. The fourth factor also counsels in favor of Credit One. Dismissing the case without prejudice at this point would allow Green to refile an identical suit at a later date, which would require the parties to undergo the expense and burden of discovery and motions practice again.

Finally, as to the fifth factor, Green does not present a compelling explanation for why this case should be dismissed. She informs the court that, since "[s]ometime in 2025," she has been subject to ongoing and unspecified "medical conditions" that "[t]reating providers have advised" are worsened by stress, and the "demands of federal litigation" have "materially exacerbated Plaintiff's symptoms and impaired her ability to meaningfully participate in this matter without risk to her health." ECF No. 54, at 1. I take Green at her word and wish her a speedy recovery. But I also note that Green initiated this lawsuit and persisted in it long enough

to compel Credit One to undergo discovery, mediation, and summary judgment. Green could instead have chosen to dismiss the case without prejudice at any point in the five months between removal in December 2024 and Defendant's Answer in April 2025. Following this court's order in November 2025, Green could have moved to dismiss her action without prejudice—prior to Credit One briefing its summary judgment motion. Here, allowing dismissal without prejudice would be prejudicial and unfair to Credit One, who would face the prospect of an identical renewed action in this court.

I therefore deny Green's motion to dismiss the case without prejudice pursuant to Rule 41(a)(2).

**B. Summary Judgment**

Credit One argues that summary judgment should be granted, and this action should be dismissed in its entirety, with prejudice, for several reasons. I will address each reason in turn.

**1. Green Has No Standing Because She is an "Authorized User"**

First, Credit One argues that Green has no standing to assert any of her claims because she is an "authorized user," and Credit One owed a duty only to the accountholder (Adrian Green) under all of the relevant statutes. *See* Def.'s Mem., ECF No. 43, at 4.

The "irreducible constitutional minimum of standing contains three elements": (1) "the plaintiff must have suffered an injury in fact," i.e., an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61

(1992) (citation modified); *see Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013).

Credit One does not specify which element of standing they believe Green has failed to meet. It cites out-of-circuit precedent in support of its standing argument from the United States District Court for Delaware. Def.'s Mem. 4 (quoting *Schiavone v. Bank of Am.*, No. 18-1269 (MN), 2019 WL 3802473, at *3 (D. Del. Aug. 13, 2019)). In *Schiavone*, the court found lack of standing because the plaintiff brought the action on behalf of his father, the accountholder, and made no "allegations of an injury in fact" to himself. *Id.*

Here, Green clearly asserts injury in fact: the damage to her credit score. To support a claim that damage to personal credit establishes standing, a plaintiff must show that "such damage resulted in a materialized injury, or a sufficiently imminent and substantial risk of injury" to confer standing. *See Campbell v. Portfolio Recovery Assocs., LLC*, No. 21-CV-1322 (PKC) (RML), 2022 WL 657225, at *1 (E.D.N.Y. Mar. 4, 2022). Green provides a letter stating that the account with Credit One prevented her from receiving an automobile loan. *See* Pl.'s Ex. E, ECF No. 48, at 18 (letter denying Green automobile financing due to "Unacceptable type of credit references provided" and "Delinquent past or present credit obligations with credit one bank"). This is sufficient to show that the alleged damage to her credit score caused a particularized injury, namely the denial of a loan.

Credit One does not address the other elements of standing. The letter provided by Green, which directly cites "[d]elinquent past or present credit obligations with credit one bank" as a cause for denial, appears to establish causality. *Id.* And Plaintiff's Complaint seeks damages for the financial loss associated with the damage to her credit score. Compl. 7. I

therefore find that Green has met the elements of standing and decline to dismiss this case for lack of standing.[3]

**2. Count One: Fair Credit Reporting Act**

Green alleges that Credit One violated several sections of the Fair Credit Reporting Act ("FCRA"), including 15 U.S.C. §§ 1681i, 1681(b), and 1681s-2(a).[4] Compl. 5. Credit One argues that it did not "access" Green's credit report, and that its obligations under FCRA were never triggered because the consumer reporting agencies ("CRA") never notified Credit One of any disputes. Def.'s Mem. 5-6. I will address each statutory basis of Green's FCRA claims in turn.

**a. 15 U.S.C. § 1681i**

The FCRA was enacted to ensure "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). The duties imposed by FCRA vary, in part, on whether an entity is a "consumer reporting agency" ("CRA") under the statutory scheme erected by FCRA.

A CRA is defined as

> any person [including partnerships and corporations] which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other

---

[3] I will discuss standing below, to the extent that it is specifically relevant to Green's claims under the Truth in Lending Act.

[4] Count One of the Complaint also broadly alleges that Defendants "failed to provide disclosures required under the Consumer Credit Protection Act," but makes specific arguments about this allegation in Count Five. *See* Compl. 5-6. I construe this allegation as part of Count Five and will address it below.

> information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f); *id.* § 1681a(b) (definition of "person").

The relevant sub-sections of § 1681i, § 1681i(a)-(d), delineate the duties of CRAs in the event that a consumer disputes the accuracy of their file. They require that CRAs "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" within thirty days, "provide notification of the dispute to any person who provided any item of information in dispute" within five business days, delete or modify any inaccurate information from the consumer's file and "promptly notify the furnisher of that information that the information has been modified or deleted," and "provide written notice to a consumer of the results of a reinvestigation" within five business days of the completion of the reinvestigation. § 1681i(a). In the event that the reinvestigation does not resolve the dispute, § 1681i further provides that the consumer may file a brief statement summarizing the dispute, which the CRA must then include in subsequent consumer reports containing the disputed information. § 1681i(b)-(c). At the request of the consumer, the CRA must also furnish notification of any deleted information, or any statement by the consumer, to any person designated by the consumer who had previously received a consumer report, within certain parameters. § 1681i(d).

The duties under § 1681i apply only to CRAs, not furnishers of information. *See Caltabiano v. BSB Bank & Trust Co.,* 387 F.Supp.2d 135, 140 (E.D.N.Y. 2005) ("As a result of not being a 'consumer reporting agency', claims against BSB under 15 U.S.C. §§ 1681e, 1681g, and 1681i are dismissed."). Green nowhere alleges that Credit One is a CRA. Instead, Credit One is a "furnisher of information," providing information *to* CRAs about

consumers.[5] "A 'furnisher' is 'an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report.'" *Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 303 (E.D.N.Y. 2014) (quoting 16 C.F.R. § 660.2); *cf. Caltabiano*, 387 F.Supp.2d at 140-41 (noting defendant bank, with whom plaintiff had an outstanding loan, was a furnisher of information and not a consumer reporting agency); *DiGianni v. Stern's*, 26 F.3d 346, 348-49 (2d Cir. 1994) (holding retail stores that merely provide information on consumer's creditworthiness are not consumer reporting agencies).

Accordingly, Credit One is not a CRA and not subject to claims under § 1681i. Green has provided no information or argument to show otherwise. I therefore grant summary judgment as to Green's FCRA claim brought under 15 U.S.C. § 1681i.

**b. 15 U.S.C. § 1681b**

By contrast, 15 U.S.C. § 1681b does apply to entities that are not CRAs in certain circumstances. Section 1681b "generally specifies the circumstances under which a consumer report may be furnished and used," and "prohibits a person from using or obtaining a consumer report for any purpose unless '(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.'" *Braun v. United Recovery Sys., LP,* 14 F. Supp. 3d 159, 165

[5] Credit One describes itself as a furnisher, *see* Def.'s Mem. 1, and Green does not dispute this categorization. Indeed, the damages alleged in her Complaint stem from allegations that Credit One improperly provided information regarding the allegedly unauthorized credit account to consumer reporting agencies Equifax and TransUnion, which negatively affected her credit score. Compl. 7 (alleging Green has suffered "[f]inancial losses, including damage to Plaintiff['s] credit scores").

(S.D.N.Y. 2014) (quoting 15 U.S.C. § 1681b(f)). To show "civil liability based on Section 1681b, a plaintiff must allege both that the defendant used or obtained the plaintiff's credit report for an impermissible purpose, and that the violation was willful or negligent." *Id.* at 166.

Credit One argues that it never "accessed" Green's credit report but rather only provided information about the Credit One account to CRAs. Def.'s Mem. 5. Green has provided no evidence that Credit One accessed her credit report. Accordingly, Green has failed to present evidence from which a reasonable juror could conclude that Credit One accessed her credit report improperly.

I therefore grant summary judgment on Green's claims under 15 U.S.C. § 1681b.

**c. 15 U.S.C. § 1681s-2**

FCRA imposes certain duties on furnishers of information. 15 U.S.C. § 1681s-2. As noted above, Credit One is a furnisher of information under the statute.

Credit One argues that a furnisher of information's "duty to investigate a consumer's dispute under [§ 1681s-2] arises only after the furnisher receives notice of the dispute from a CRA" and that "[d]irect disputes to the furnisher do not trigger this obligation." Def.'s Mem. 6. Credit One maintains that it has no record of receiving a notice from a CRA of any dispute regarding Green. *Id.* Green responds by providing letters from herself to Equifax, TransUnion, and Credit One disputing the allegedly unauthorized account. Pl.'s L.R. 56(a)2 St. ¶ 3, ECF No. 48. Green does not provide any evidence of communications from a CRA to Credit One.

Sections 1681s-2(a) and 1681s-2(b) of Title 15 govern the responsibilities of furnishers of information when the accuracy of a consumer report is disputed. Section 1681s-2(a) concerns the duties of a furnisher of information when a *consumer* "provide[s] a dispute notice directly to" the furnisher of information. Section 1681s-2(b), by contrast, concerns the duties

of a furnisher of information when a *consumer reporting agency* provides notice of a dispute involving information provided by the furnisher of information.

The two provisions are enforced differently. Under § 1681s-2(a), once a furnisher of information receives notice of a dispute, the furnisher of information must conduct an investigation into the disputed information, and if the information is found to be inaccurate, notify each consumer reporting agency who received the inaccurate information and provide any necessary corrections. Section 1681s-2(a) may only be enforced by statutorily identified federal agencies and officials and state officials. Thus, there is no private right of action under § 1681s-2(a). *See Trikas v. Universal Card Services Corp.*, 351 F. Supp. 2d 37, 44 (E.D.N.Y. 2005).

In contrast, the enforcement of 15 U.S.C. § 1681s-2(b) is not limited by statute to federal agencies and officials and state officials. Under § 1681s-2(b), once a furnisher of information receives notice from a consumer reporting agency, the furnisher of information must "conduct an investigation with respect to the disputed information" and "report the results of the investigation to the consumer reporting agency." *Id.* § 1681s-2(b)(1)(A)-(C). If the information is found to be "incomplete or inaccurate," it must "report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis." *Id.* § 1681s-2(b)(1)(D). "[I]f an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . for purposes of reporting to a consumer reporting agency," the furnisher of information must also either modify, delete, or permanently block the reporting of that item of information. *Id.* § 1681s-2(b)(1)(E).

Courts have found that a claim can be brought in court against a furnisher of information under § 1681s-2(b). *See Trikas*, 351 F. Supp. 2d at 44; *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2010).

To prevail on a claim under 15 U.S.C. § 1681s-2(b), the plaintiff must establish that "(1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in willful or negligent noncompliance with the statute." *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012) (citation modified). In *Trikas*, for example, on a motion for summary judgment, the court found that FCRA had been violated because "[t]he Bank's records show that it received a consumer dispute verification (CDV) from three consumer reporting agencies," and the furnisher failed to timely complete its statutorily required "investigations, reviews, and reports." *Trikas*, 351 F. Supp. 2d at 44. Direct notice from the consumer to the furnisher of information is insufficient to trigger obligations under § 1681s-2(b), as duties under § 1681s-2(b) "arise[] only when the furnisher receives notice of a dispute from a CRA." *Suluki v. Credit One Bank, NA*, 138 F.4th 709, 720 (2d Cir. 2025). In other words, "where a consumer shows only that the furnisher received notice of the dispute from the consumer, but not from a credit reporting agency, no claim is stated. . . . Thus, under Section 1681s-2(b) a furnisher of credit information has no duty to investigate a credit dispute unless it has received notice of the dispute from the credit reporting agency." *Markovskaya*, 867 F. Supp. 2d at 344.

Credit One submits a declaration stating that: "[a] review of the Account records concerning the subject Account confirms that Credit One has no record of having ever received notice of a dispute from any Credit Reporting Agency ('CRA'), including, but not limited to,

Experian, Equifax and TransUnion, concerning the credit reporting of the Account as to Plaintiff Morgan Green." Zuardo Decl. ¶ 11, ECF No. 43-3.

On this record, Green has not provided sufficient evidence from which a reasonable jury could find that Credit One received notice of a credit dispute from a CRA. Green provides letters she says she sent to TransUnion, Equifax, and Credit One. ECF No. 48, at 3-6. She includes no responses from TransUnion or Equifax. Green does supply a response from Credit One, which acknowledges receipt of her letter to Credit One dated July 12, 2024 but does not indicate that Credit One received any notice from TransUnion or Equifax that Green had disputed the account. *Id.* at 8-9.

In her Statement of Additional Material Facts, Green asserts that the "credit reporting agencies responded that the account was 'verified'" and on "information and belief" Credit One received notice of her dispute from one or more credit reporting agencies. Pl.'s L.R. 56(a)2 St. ¶¶ 6-7, ECF No. 48. Green attaches a document that states, with respect to the Credit One account: "We investigated the information you disputed and the disputed information was VERIFIED AS ACCURATE." Pl.'s L.R. 56(a)2 St., ECF No. 48, at 11.

After reviewing Green's submissions, the court ordered supplemental briefing from Credit One requesting that it explain whether the verification referenced in the document supplied by Green, *see* ECF No. 48, at 11, involved communication between a CRA and Credit One, and if so, why such communication does not constitute notice of a dispute for the purpose of 15 U.S.C. § 1681s-2.

In its supplemental briefing, Credit One maintains that the document supplied by Green is insufficient to defeat summary judgment. First, Credit One alleges that the document should be deemed inadmissible because Green did not supply it to Credit One during discovery despite

Credit One's request for "all documents between you and any CRA relating to disputes of your credit reporting of the Account." Def.'s Supp. Mem. 1-3.[6] Second, Credit One reiterates that it "has not received any notice of dispute from the CRA in connection with the Plaintiff or the account at issue in this litigation." *Id.* at 3.

Green argues in response that she misunderstood the discovery process, and furthermore, provides three reasons for why she believes a CRA must have notified Credit One of a dispute concerning her account. Pl.'s Opp. First, Green states that in her discovery responses she said that Equifax, Experian, and TransUnion responded to her outreach by stating that her Credit One account was "verified." Pl.'s Opp. 4. Second, Green asserts that Credit One's own e-OSCAR AUD records show that Credit One submitted AUD deletion requests concerning Equifax, Experian, and TransUnion. Although Green contends that such records "prove two-way communication through the CRA system" and that Credit One's "active use of [the e-OSCAR AUD] system," which "is the automated platform through which CRAs and furnishers exchange dispute-related information," necessarily "contradicts its claim that it never received any communication from the CRAs," Green provides no evidence that any CRA had actually contacted Credit One. *Id.* Third, and related to her second point, Green states "the Zuardo declaration is internally contradictory," as it "strains credulity" that Credit One could submit requests to the CRAs through e-OSCAR yet have "no record of ever having ever received notice of a dispute from any Credit Reporting Agency." *Id.*

[6] Indeed, Credit One observes that none of the documents provided by Green to oppose summary judgment were provided to it during discovery. Def.'s Supp. Mem. 2.

Here, Credit One provides a declaration from Zuardo, an Assistant Vice President of Customer Service, that attests that he has reviewed Capital One's records and determined that Capital One has no record of having ever received notice of a dispute from a CRA regarding Green's account. Even if I consider Green's documents despite her late disclosure of them, these documents do not establish that a CRA notified Credit One of a dispute regarding the account. Green also provides no testimony from anyone with personal knowledge regarding any notice.

Given the lack of evidence in the record that Credit One received notice of the dispute from a CRA, a reasonable jury could not conclude such notice was provided.

I therefore grant summary judgment to Credit One on Green's claims under § 1681s-2.

### 3. Count Two: Fair Debt Collection Practices Act

Green also claims that Credit One "engaged in unfair and deceptive practices in violation of [the Fair Debt Collection Practices Act ("FDCPA")] § 809(a) by attempting to collect a debt not owed by" Green. Compl. 6. She also alleges that Credit One "misrepresented the nature of [Green's] obligations under the unauthorized account, in violation of FDCPA § 807." *Id.* Credit One responds that it is not a debt collector under the statute, and that it has never attempted any collection efforts against Green. Def.'s Mem. 7.

"To state a FDCPA claim, a plaintiff must show that: (1) [he or] she has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-CV-3760, 2011 WL 347222, at *4 (S.D.N.Y. Feb. 1, 2011) (internal quotation marks omitted). The Act defines a "debt collector" as any person "who regularly collects . . . debts owed or due." 15 U.S.C. § 1692a.

"In contrast, a 'creditor' is a 'person who offers or extends credit creating a debt,' but 'does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.'" *Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 462 (S.D.N.Y. 2009) (quoting 15 U.S.C. § 1692a(4)). "'Creditors generally are not subject to the FDCPA,' . . . unless the creditor[,] in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." *Id.*

Here, Green provides only bare allegations in the Complaint. Compl. 6. In her response to interrogatories, she alleges that Credit One took actions to collect a debt from her. Ex. C, ECF No. 45, at 22 (stating that Credit One "attempted to collect a debt not owed" by making "repeated communications and collection efforts"). However, Green does not provide any of those communications and none appear in the record before me. Thus, Green has failed to provide sufficient evidence from which a reasonable jury could conclude that Credit One acted as a debt collector within the meaning of the FDCPA. I therefore grant summary judgment as to Count Two.

**4. Count Three: Truth in Lending Act**

In Count Three, Green alleges that Credit One "failed to provide required account opening disclosures" and "critical loan terms and prepayment penalties" under the Truth in Lending Act ("TILA"), and Credit One's "actions constitute unauthorized issuance of credit" under the TILA. Compl. 6. Credit One responds that the TILA's disclosure requirements do not apply to Green because she is an authorized user of the account, not the accountholder. Def.'s Mem. 8. It further argues that Adrian Green, the accountholder, received the required disclosures under the TILA. *Id.*

"The TILA was enacted in 1968 to 'protect consumers against inaccurate and unfair credit billing and credit card practices' and promote 'the informed use of credit' by 'assuring a meaningful disclosure' of credit terms.'" *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016) (citation omitted). "TILA imposes mandatory disclosure requirements on certain credit and loan transactions and additionally creates a private right of action for damages for violations of its provisions." *Edwards v. McMillen Cap., LLC*, 574 F. Supp. 3d 52, 66 (D. Conn. 2021). "In general, TILA requires creditors to provide borrowers clear, conspicuous, and accurate disclosures of the loan terms and other material information." *Midouin v. Downey Sav. & Loan Ass'n*, F.A., 834 F. Supp. 2d 95, 102 (E.D.N.Y. 2011) (citing 15 U.S.C. § 1632). "The act provides, in relevant part, that 'a creditor or lessor shall disclose to the person who is obligated on a consumer lease or a consumer credit transaction' certain kinds of information.'" *Lensendro v. Young*, No. 3:24-CV-1760 (AWT), 2025 WL 1104278, at *4 (D. Conn. Apr. 14, 2025) (quoting 15 U.S.C. § 1631(a)). Covered transactions include "closed-end" and "open-end" transactions. *See Edwards*, 574 F. Supp. at 67. "'A closed-end credit' transaction . . . includes a completed loan such as a mortgage or car loan. By contrast, an open-end credit transaction is one in which the creditor reasonably contemplates repeated transactions." *McAnaney v. Astoria Fin. Corp.,* No. 04-CV-1101 (JFB)(WDW), 2008 WL 222524, at *4 (E.D.N.Y. Jan. 25, 2008) (citation modified). With respect to "open end consumer credit plans," such as the credit card at issue here, the TILA obligates creditors, "[b]efore opening any account under an open end consumer credit plan," to "disclose to the person to whom credit is to be extended" certain information, including the "conditions under which a finance charge may be imposed," the "method of determining the amount of the

finance charge", and "other charges which may be imposed as part of the plan." 15 U.S.C. § 1637(a).

Zuardo's declaration states that Credit One sent a physical plastic card to the accountholder, Adrian Green, along with a copy of the required TILA disclosures. Zuardo Decl. ¶¶ 3, 8. Morgan Green denies that she received these disclosures and appears to deny that the accountholder, Adrian Green, received them either. Pl.'s L.R. 51(a)2 St. ¶¶ 8-9, ECF No. 47 ("Plaintiff denies receipt of any credit card, account agreement, or required disclosures" and "disputes . . . delivery of the alleged Account Agreement and disclosures."). Zuardo states that Credit One "has no record of the plastic credit card or the Card Agreement and disclosures having been returned to Credit One as 'undeliverable.'" Zuardo Decl. ¶ 9.

Credit One argues that Green is not a "person who is obligated" on the account within the meaning of the TILA because she is only an authorized user, not the accountholder, and therefore is not legally responsible for the debt. Def.'s Mem. 8; Zuardo Decl. ¶ 10. Green denies this assertion but provides no counterargument or evidence to the contrary.

The TILA, in 15 U.S.C. § 1637(a), "obligates a creditor to make specified disclosures 'to the person to whom credit is to be extended.'" *Strubel*, 842 F.3d at 188. I conclude that Green does not qualify as a "person to whom credit is to be extended" under § 1637(a).

First, Green claims that she never had access to a credit card under the account. *See* Pl.'s L.R. 56(a)2 St. ¶ 8, ECF No. 47. Under those circumstances, Green would never have had an opportunity to make any charges on the account. Credit One's records appear to back this up, showing that an account was opened by Adrian Green and a single "physical plastic credit card" was sent "to the cardholder, Adrian Green." Def.'s Ex. A, ECF No. 43-1, at 1;

Zuardo Decl. ¶ 8. Green has produced no evidence to contradict these records. A creditor is only obligated to make TILA disclosures "to the person to whom credit is to be extended." 15 U.S.C. § 1637(a). Green denies even having access to the credit card.

However, even if Green were able to demonstrate that she *did* have access to a credit card on the account as an authorized user, Credit One still would not have been obligated to make TILA disclosures to her. The record shows that Green is an authorized user on the account *at most*. There is no evidence in the record indicating that Green was obligated to pay any debt to Credit One on the account, despite her FDCPA claim. Courts have held that authorized users are not contractually liable for charges they make on the account. *See, e.g.*, *Schiavone v. Bank of Am*., No. CV 18-1269 (MN), 2019 WL 3802473, at *3 (D. Del. Aug. 13, 2019) ("Decisional law indicates that [ ] authorized users are not regarded as contractually liable for charges they make on the account.") (citation modified).

In *Edwards v. Wells Fargo and Co*., 606 F.3d 555 (9th Cir. 2010), the Ninth Circuit addressed a credit card issuer's duty to communicate regarding billing disputes under another section of the TILA. In considering whether an authorized user was a person "to whom consumer credit is offered or extended," the court reasoned that anyone to whom credit is extended must be able to defer payment of debt, as the TILA "defines 'credit' as 'the right . . . to defer payment of debt or to incur debt and defer its payment.'" *Id.* at 560. Furthermore, the person who "had the right to defer payment" to the creditor must be responsible for the debt, or an obligor. *Id.* Therefore, the person "to whom consumer credit is offered or extended" must be the person who "owe[d] the money," or an "obligor," on the credit card. *Id.* at 559-61. An authorized user is not responsible for debt but merely incurs debt *on behalf* of the obligor. *Id.* at 559.

Accordingly, I conclude that authorized users such as Green are not "person[s] to whom credit is to be extended," 15 U.S.C. § 1637(a), and Credit One was not obliged under the TILA to provide disclosures to Green.

I therefore grant summary judgment on Count Three.

**5. Count Four: FTC Act**

Green further claims that Credit One "engaged in unfair or deceptive acts or practices, including unauthorized credit pulls and failure to provide required consumer disclosures" in violation of the Federal Trade Commission ("FTC") Act § 5. Credit One responds that there is no private right of action under the FTC Act, and that Green therefore cannot bring a claim under the Act. Def.'s Mem. 8.

Defendant is correct. "It is well settled that there is no private right of action under the FTC Act." *Loussides v. Am. Online, Inc.*, 175 F. Supp. 2d 211, 214 (D. Conn. 2001). I therefore grant the motion for summary judgment as to Count Four.

**6. Count Five: "CCPA"**

In Count Five, Green alleges that Credit One violated "the CCPA" by failing to respond to consumer requests regarding personal information, engaging in the unauthorized sale or sharing of personal information, or failing to report unauthorized access to personal information. Compl. 6. It appears that Green was referencing the federal "Consumer Credit Protection Act," as she clarifies the acronym in a response to an interrogatory. *See* Def's Ex. C, ECF No. 45, at 23. Credit One appears to have misunderstood which statute was at issue. *See* Def.'s Mem. 8-9 (responding to the "Connecticut Creditors' Collection Practices Act").

The federal Consumer Credit Protection Act, codified at 15 U.S.C. §§ 1681 et seq., is a statute that includes FCRA, TILA, FDCPA, and other provisions including restrictions on

wage garnishment and credit repair organizations. It is not clear what provisions in the CCPA Green is referencing.

To the extent that Green asserts that Credit One improperly shared her credit report information under FCRA, that argument has already been covered in the discussion of Count One, above. Green has failed to show her entitlement to relief under the federal Consumer Credit Protection Act. I therefore grant summary judgment on Count Five.

### 7. Count Six: Credit Card Accountability Responsibility and Disclosures Act

In Count Six, Green alleges that Credit One imposed unfair interest rate increases without providing notice and charged unlawful and undisclosed fees, in violation of the Credit Card Accountability Responsibility and Disclosures ("CARD") Act. Compl. 6. Credit One responds that she has no standing to assert these claims because, as an authorized user, she is not liable for any such fees; moreover, they argue that she has failed to produce any evidence that she was, in fact, charged any specific fees or why they were illegal. Def.'s Mem. 9.

The CARD Act was an amendment to the TILA which created new reporting requirements. *See Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 201 (2011). Thus, for the same reasons I granted summary judgment on the TILA claims, I grant summary judgment on the CARD Act claims.

## IV. CONCLUSION

For the foregoing reasons, Green's Renewed Motion to Dismiss without Prejudice, ECF No. 54, is hereby denied. Credit One's Motion for Summary Judgment, ECF No. 43, is hereby granted in its entirety. The Clerk of Court is respectfully directed to enter judgment in Credit One's favor and close the case.

**SO ORDERED.**

New Haven, Connecticut
September 23, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge